UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| SAMUEL SHAW, JR., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 3:18-CV-155-PLR-DCP |
| | ) |
| MIKE PARRIS, STANTON HIEDLE, | ) |
| TOMMY JEFFERS, T. ROBINSON, | ) |
| M. MONKHOUSE, and | ) |
| STEVE CANTRELL, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Samuel Shaw, Jr., is an inmate proceeding pro se in this civil rights action alleging violations of 42 U.S.C. § 1983 while housed at the Morgan County Correctional Complex ("MCCX"). MCCX personnel Mike Parris, Stanton Hiedle, Tommy Jeffers, and Steve Cantrell ("Defendants") have filed a motion to dismiss Plaintiff's complaint in part [Doc. 32], and Plaintiff has responded to the motion to dismiss by filing a "Motion to Dispose of Defendants['] Motion to Partially Dismiss Plaintiff's Complaint" [Doc. 42]. Having considered the parties' pleadings and the applicable law, the Court finds that Defendants' motion should be **GRANTED IN PART AND DENIED IN PART** and that Plaintiff's Motion should be **DENIED AS MOOT**, for the reasons that follow.

### I. PLAINTIFF'S ALLEGATIONS

At the time he initiated this lawsuit in April 2018, Plaintiff was an inmate in the custody of the Tennessee Department of Correction ("TDOC") housed in administrative segregation in the high security unit at MCCX [Doc. 1 p. 1, 3]. Plaintiff asked Defendant Cantrell, a Chaplain at the facility, and Defendant Hiedle, a unit manager at MCCX, for Islamic counseling, reading, and

worship materials [*Id*. p. 3]. However, Defendant Cantrell refused to speak with Plaintiff and repeatedly sent Plaintiff counselors, reading, and worship materials of the Christian faith [*Id*.]. Plaintiff filed a grievance on February 2018 based on religious discrimination, claiming that Islamic volunteers are not allowed the same access to the high security unit as Christian volunteers, and that Islamic inmates do not receive relevant reading and worship materials [*Id*.]. Plaintiff raised his concerns to Defendant Parris, Warden of MCCX, who told Plaintiff, "[T]his isn't the Middle East or Red Roof Inn, so deal with it" [*Id*. p. 4].

On March 21, 2018, Plaintiff spoke with Corporal M. Monkhouse, the grievance chairperson, regarding any infirmities in his compliance with the grievance procedure, but Corporal Monkhouse refused to instruct Plaintiff as how to correctly complete the grievance process [*Id*.]. Instead, Corporal Monkhouse told Plaintiff to "[T]ry Jesus" [*Id*.]. Thereafter, Plaintiff asked to speak to the officer in charge, Corporal Robinson, who told Plaintiff to "stop whining" [*Id*.]. Plaintiff was denied an opportunity to speak to the next officer in command, so he "put water under his door" in order to "caus[e] a scene" and gain the attention of a higher-ranking officer [*Id*.]. Defendant Hiedle, Plaintiff's unit manager, then ordered that all running water to Plaintiff's cell be shut off [*Id*.]. After explaining to Plaintiff why he shut off the water, Defendant Hiedle instructed a "prison response team" to extract Plaintiff from his cell [*Id*.].

Plaintiff was then handcuffed and walked directly in front of his cell, where he observed Unit Manager Hiedle, Sergeant Jeffers, and Corporal Robinson removing Plaintiff's personal contents from the cell [*Id*. p. 5]. When Plaintiff protested, Defendant Hiedle told two prison employees to "keep [Plaintiff's] mouth shut," at which time the employees shoved Plaintiff's head against the wall and "sandwiched" his lips together with their hands [*Id*.]. Defendant Hiedle then instructed Sergeant Jeffers, Corporal Robinson, and the two response team members to "give [Plaintiff] his birthday suit with a special gift," meaning to beat Plaintiff and remove his clothes

2

[*Id*.]. At that time, Sergeant Jeffers and three other prison employees began kicking, punching, slapping, and choking Plaintiff while removing his clothes [*Id*.]. Plaintiff was left in his cell naked, beaten, and without running water from approximately 10:00 a.m. on March 21, 2018, until 7:00 a.m. on March 23, 2018 [*Id*.].

Plaintiff filed this § 1983 complaint on or about April 13, 2018, alleging that (1) Defendant Cantrell violated Plaintiff's Fourteenth Amendment rights by failing to provide counseling services and reading/worship materials to Islamic inmates [*Id*. p. 7]; (2) Defendant Jeffers violated Plaintiff's Eighth Amendment rights by using excessive force against him [*Id*.]; (3) Defendant Hiedle violated Plaintiff's First Amendment rights by ordering and threatening Plaintiff with physical violence for exercising his grievance rights and seeking to practice his religion [*Id*. p. 8]; and (4) Defendant Parris violated Plaintiff's First and Eighth Amendment rights by having knowledge of the other Defendants' misconduct and failing to correct that misconduct [*Id*.]. Plaintiff sues Defendants in their individual and official capacities and seeks both punitive and compensatory damages, along with an injunction ordering all named Defendants to cease their physical violence, threats, intimidation, neglect, and discrimination toward Plaintiff [*Id*. p. 2, 9].

## II.    MOTION TO DISMISS STANDARD

To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim for relief is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. A claim for relief is implausible on its face when "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Id*. at 679. When considering a plaintiff's claims, all factual allegations in the complaint must be

taken as true. *See, e.g.*, *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007). However, the Supreme Court has cautioned:

> Determining whether a complaint states a plausible claim for relief will. . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not "show[n]"- "that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

*Iqbal*, 556 U.S. at 679 (internal citations omitted).

### III. DISCUSSION

#### A. OFFICIAL-CAPACITY CLAIMS

In an action against an officer acting in an official capacity, "the plaintiff seeks damages not from the individual officer, but from the entity from which the officer is an agent." *Pusey v. City of Youngstown*, 11 F.3d 652, 657 (6th Cir. 1993); *see also See Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (holding "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity"). At all relevant times, Defendants were employees of TDOC. Therefore, Plaintiff's official-capacity claims against Defendants are essentially claims against the State of Tennessee.

Under the Eleventh Amendment to the United States Constitution, a State is immune from actions for damages unless its immunity has been abrogated by Congress or expressly waived by the State. U.S. Const. Amend XI; *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *Quern v. Jordan*, 440 U.S. 332, 320–45 (1979). Tennessee has not waived its immunity. *See Berndt v. State of Tennessee*, 796 F.2d 879, 881 (6th Cir. 1986) (noting that Tennessee has not waived immunity to suits under § 1983). Therefore, Plaintiff's claim for money damages against

all Defendants in their official capacities is barred by the Eleventh Amendment.[1] *See id*. Accordingly, the claims against all Defendants[2] in their official capacities will be **DISMISSED**.

### B. INJUNCTIVE RELIEF

A claim for injunctive relief against a prison official becomes moot when the prisoner is transferred to another facility. *See, e.g., Henderson v. Martin*, 73 F. App'x 115, 117 (6th Cir. 2003) (holding prisoner's claim for injunctive relief made moot by prisoner's transfer to a different facility); *Kensu v. Haugh*, 87 F.3d 172, 175 (6th Cir. 1996) (holding prisoner's claim for declaratory and injunctive relief rendered moot when he was no longer housed at the facility giving rise to lawsuit). Plaintiff filed the instant suit seeking injunctive relief for alleged constitutional violations at MCCX [Doc. 1 p. 1, 9]. However, Plaintiff is now housed at the Riverbend Maximum Security Institution ("RSMI") [Doc. 18]. No named Defendant works at RSMI [Doc. 1 p. 1-2]. Accordingly, Plaintiff's request for injunctive relief is rendered moot by his transfer, and his request for injunctive relief will be **DISMISSED**.

### C. DEFENDANT PARRIS IN HIS INDIVIDUAL CAPACITY

Defendant Parris seeks dismissal of all claims against him in his individual capacity, claiming that Plaintiff has failed to allege that he had any sufficient personal involvement in the alleged constitutional deprivations [Doc. 32 p. 1].

---

[1] An exception to sovereign immunity exists in cases of prospective injunctive relief. *See, e.g., Ex Parte Young*, 209 U.S. 123 (1908). Therefore, Plaintiff's claims for prospective injunctive relief are not barred by sovereign immunity. However, Plaintiff is no longer housed at MCCX, and therefore, his request for injunctive relief is moot [Doc. 18]. *See, e.g., Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 510 (6th Cir. 2001) (finding request for injunctive relief moot where plaintiff was no longer incarcerated at the facility).

[2] Two additional Defendants, T. Robinson and M. Monkhouse, have not appeared in this action. The Court finds, however, that its Eleventh Amendment analysis is equally applicable to these Defendants.

In a § 1983 action, supervisory prison officials cannot be held responsible for the actions of subordinates. *Iqbal*, 556 U.S. at 676. Rather, a prison official can only be held liable for his own unconstitutional conduct. *Colvin v. Caruso*, 605 F.3d 282, 292 (6th Cir. 2010). Accordingly, an official's liability cannot be based on a mere right to control employees or "simple awareness of employees' misconduct." *Leary v. Daeschner*, 349 F.3d 888, 903 (6th Cir. 2003); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). Instead, a plaintiff must allege that the supervisory official "either encouraged the specific misconduct or in some other way directly participated in it. At a minimum a plaintiff must show that the official at least impliedly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (citation and internal citation omitted).

Defendants maintain that Plaintiff's only factual allegation regarding Warden Parris is that Plaintiff spoke to Warden Parris about discrimination and mistreatment regarding his religious preference, and that Warden Parris told Plaintiff, "[T]his isn't the Middle East or Red Roof Inn, so deal with it" [*See* Doc. 1 p. 4]. Defendants argue that because a failure to intervene based solely on an awareness of allegedly unconstitutional conduct does not establish personal liability under § 1983, *see Leary*, 349 F.3d at 903, Defendant Parris is entitled to dismissal.

The Court finds Defendants' argument valid regarding Plaintiff's Eighth Amendment claim against Defendant Parris, as there is no indication in Plaintiff's complaint that Warden Parris had any personal involvement or knowing acquiescence in the discrete acts of excessive force alleged by Plaintiff. The Court disagrees, however, with Defendants' contention that Plaintiff's allegations are insufficient to state a colorable First Amendment claim against Defendant Parris.

Here, Plaintiff has alleged that while he was housed at MCCX, there was a continuous, ongoing violation of his First Amendment rights, and that Defendant Parris knew of that alleged violation and failed to take any measures to correct it, even though it was within his power to do

so. The Court finds that this allegation is sufficient to infer that Defendant Parris plausibly encouraged or acquiesced in ongoing conduct violative of Plaintiff's First Amendment rights. Accordingly, Defendants' motion to dismiss Defendant Parris will be **GRANTED** as to Plaintiff's Eighth Amendment claim and **DENIED** as to Plaintiff's First Amendment claim.

IV. **CONCLUSION**

For the reasons set forth above, it is **ORDERED**:

1. All claims against Defendants in their official capacities are **DISMISSED**;

2. Plaintiff's claims for injunctive relief are **DENIED AS MOOT**;

3. Defendants' motion to dismiss as it pertains to Plaintiff's Eighth Amendment claim against Defendant Parris in his individual capacity is **GRANTED**;

4. Defendants' motion to dismiss as it pertains to Plaintiff's First Amendment claim against Defendant Parris in his individual capacity is **DENIED**;

5. Plaintiff's motion to dismiss [Doc. 42] is **DENIED AS MOOT**;

6. Defendants shall file an answer or other response to all remaining claims within fourteen (14) days of entry of this Order; and

7. Plaintiff is **ORDERED** to immediately inform the Court and Defendants or their counsel of record of any address changes in writing. Pursuant to Local Rule 83.13, it is the duty of a pro se party to promptly notify the Clerk and the other parties to the proceedings of any change in his or her address, to monitor the progress of the case, and to prosecute or defend the action diligently. E.D. Tenn. L.R. 83.13. Failure to provide a correct address to this Court within fourteen (14) days of any change in address may result in the dismissal of this action.

**SO ORDERED**.

**ENTER:**

_____
**CHIEF UNITED STATES DISTRICT JUDGE**