UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| SAMUEL SHAW, JR., | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | No. 3:18-CV-155-TAV-DCP |
| MIKE PARRIS, STANTON HIEDLE, TOMMY JEFFERS, M. MONKHOUSE, and STEVE CANTRELL, | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

Defendants have filed a motion for summary judgment[1] seeking dismissal of this pro se prisoner's complaint for violation of 42 U.S.C. § 1983, and a motion to dismiss this case and stay deadlines [Docs. 103 and 107; *see also* Doc. 106]. Plaintiff has not responded to these motions, and the deadline to do so has passed. *See* E.D. Tenn. L.R. 7.1(a). Upon consideration of the parties' pleadings, the competent summary judgment evidence, and the applicable law, the Court finds that summary judgment should be **GRANTED**, Defendants' motion to dismiss **DENIED** as moot, and this action **DISMISSED**.

### I. ALLEGATIONS OF COMPLAINT & PROCEDURAL HISTORY

At all relevant times, Plaintiff was an inmate in the custody of the Tennessee Department of Correction ("TDOC") confined to administrative segregation in a high security housing unit of the Morgan County Correctional Complex ("MCCX") [Doc. 1

---

[1] Defendants filed a motion for judgment on the pleadings that the Court converted to a motion for summary judgment [*See* Doc. 105].

pp. 1, 3]. Plaintiff asked Steve Cantrell, a chaplain at the facility, and Stanton Hiedle, a unit manager at MCCX, for Islamic counseling, reading, and worship materials [*Id*. at 3]. However, Cantrell refused to speak with Plaintiff and repeatedly sent Plaintiff counselors, reading, and worship materials of the Christian faith. Plaintiff filed a grievance on February 2018, based on religious discrimination, claiming that Islamic volunteers are not allowed the same access to the high security unit as Christian volunteers, and that Islamic inmates do not receive relevant reading and worship materials [*Id*.]. Plaintiff raised his concerns to Mike Parris, Warden of MCCX, who told Plaintiff, "[T]his isn't the Middle East or Red Roof Inn, so deal with it" [*Id*. at 4].

On March 21, 2018, Plaintiff spoke with Corporal M. Monkhouse, the grievance chairperson, regarding any infirmities in his compliance with the grievance procedure, but Corporal Monkhouse refused to instruct Plaintiff as how to correctly complete the grievance process [*Id*.]. Instead, Corporal Monkhouse told Plaintiff to "[T]ry Jesus." Thereafter, Plaintiff asked to speak to the officer in charge, Corporal Robinson, who told Plaintiff to "stop whining." Plaintiff was denied an opportunity to speak to the next officer in command, so he "put water under his door" in order to "caus[e] a scene" and gain the attention of a higher-ranking officer. Hiedle, Plaintiff's unit manager, then ordered that all running water to Plaintiff's cell be shut off. After explaining to Plaintiff why he shut off the water, Hiedle instructed a "prison response team" to extract Plaintiff from his cell [*Id*.].

Plaintiff was then handcuffed and walked directly in front of his cell, where he observed Hiedle, Sergeant Tommy Jeffers, and Corporal Robinson removing Plaintiff's personal contents from the cell [*Id*. at 5]. When Plaintiff protested, Hiedle told two prison

2

Case 3:18-cv-00155-TAV-DCP   Document 109   Filed 06/24/22   Page 2 of 8   PageID #: 600


pp. 1, 3]. Plaintiff asked Steve Cantrell, a chaplain at the facility, and Stanton Hiedle, a unit manager at MCCX, for Islamic counseling, reading, and worship materials [*Id*. at 3]. However, Cantrell refused to speak with Plaintiff and repeatedly sent Plaintiff counselors, reading, and worship materials of the Christian faith. Plaintiff filed a grievance on February 2018, based on religious discrimination, claiming that Islamic volunteers are not allowed the same access to the high security unit as Christian volunteers, and that Islamic inmates do not receive relevant reading and worship materials [*Id*.]. Plaintiff raised his concerns to Mike Parris, Warden of MCCX, who told Plaintiff, "[T]his isn't the Middle East or Red Roof Inn, so deal with it" [*Id*. at 4].

On March 21, 2018, Plaintiff spoke with Corporal M. Monkhouse, the grievance chairperson, regarding any infirmities in his compliance with the grievance procedure, but Corporal Monkhouse refused to instruct Plaintiff as how to correctly complete the grievance process [*Id*.]. Instead, Corporal Monkhouse told Plaintiff to "[T]ry Jesus." Thereafter, Plaintiff asked to speak to the officer in charge, Corporal Robinson, who told Plaintiff to "stop whining." Plaintiff was denied an opportunity to speak to the next officer in command, so he "put water under his door" in order to "caus[e] a scene" and gain the attention of a higher-ranking officer. Hiedle, Plaintiff's unit manager, then ordered that all running water to Plaintiff's cell be shut off. After explaining to Plaintiff why he shut off the water, Hiedle instructed a "prison response team" to extract Plaintiff from his cell [*Id*.].

Plaintiff was then handcuffed and walked directly in front of his cell, where he observed Hiedle, Sergeant Tommy Jeffers, and Corporal Robinson removing Plaintiff's personal contents from the cell [*Id*. at 5]. When Plaintiff protested, Hiedle told two prison

employees to "keep [Plaintiff's] mouth shut," at which time the employees shoved Plaintiff's head against the wall and "sandwiched" his lips together with their hands. Hiedle then instructed Sergeant Jeffers, Corporal Robinson, and the two response team members to "give [Plaintiff] his birthday suit with a special gift," meaning to beat Plaintiff and remove his clothes. At that time, Sergeant Jeffers and three other prison employees began kicking, punching, slapping, and choking Plaintiff while removing his clothes. Plaintiff was left in his cell naked, beaten, and without running water from approximately 10:00 a.m. on March 21, 2018, until 7:00 a.m. on March 23, 2018 [*Id.*].

Plaintiff filed this § 1983 complaint on or about April 13, 2018, alleging that (1) Cantrell violated Plaintiff's Fourteenth Amendment rights by failing to provide counseling services and reading/worship materials to Islamic inmates; (2) Jeffers violated Plaintiff's Eighth Amendment rights by using excessive force against him; (3) Hiedle violated Plaintiff's First Amendment rights by ordering and threatening Plaintiff with physical violence for exercising his grievance rights and seeking to practice his religion; and (4) Parris violated Plaintiff's First and Eighth Amendment rights by having knowledge of the other Defendants' misconduct and failing to correct that misconduct [*Id*. at 7–8]. Plaintiff sued Defendants in their individual and official capacities and seeks both punitive and compensatory damages, along with an injunction ordering all named Defendants to cease their physical violence, threats, intimidation, neglect, and discrimination toward Plaintiff [*Id*. at 2, 9]. The Court allowed Plaintiff's claims to proceed [Doc. 20].

In response, Defendants filed a partial motion to dismiss the complaint [Doc. 32]. On January 30, 2022, the Court dismissed all official capacity claims against Defendants, Plaintiff's claims for injunctive relief, and Plaintiff's Eighth Amendment claim against Parris [*See* Doc. 46].

Defendants subsequently moved for summary judgment on Plaintiff's remaining claims, arguing that Plaintiff failed to exhaust his administrative remedies prior to filing suit [Doc. 103]. Defendants also moved to dismiss this action for Plaintiff's failure to prosecute and comply with an Order of the Court, maintaining that Plaintiff failed to timely file his pretrial narrative statement [Doc. 107].

## II. SUMMARY JUDGMENT STANDARD

Rule 56(a) of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, the court must draw all reasonable inferences in favor of the nonmoving party. *McLean v. 988011 Ontario Ltd*, 224 F.3d 797, 800 (6th Cir. 2000). Summary judgment is proper if the evidence, taken in the light most favorable to the nonmoving party, shows that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. *Hartman v. Great Seneca Fin. Corp.*, 569 F.3d 606, 611 (6th Cir. 2009) (quotation marks omitted).

The moving party has the burden of conclusively showing the lack of any genuine issue of material fact. *Smith v. Hudson*, 600 F.2d 60, 63 (6th Cir. 1979). In order to

successfully oppose a motion for summary judgment, a party "'must set forth specific facts showing that there is a genuine issue for trial'" and "'may not rest upon the mere allegations or denials of his pleading.'" *Anderson v. Liberty Lobby, Inc.*, 47 U.S. 242, 248 (1986) (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968)).

However, a district court cannot grant summary judgment in favor of a movant simply because the adverse party has not responded. *Stough v. Mayville Cmty. Sch.*, 138 F.3d 612, 614 (6th Cir. 1998). Rather, the court is required to, at a minimum, examine the motion to ensure that the movant has met its initial burden. *Id.* In doing so, the court "must not overlook the possibility of evidentiary misstatements presented by the moving party." *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 407 (6th Cir. 1992). The court must "intelligently and carefully review the legitimacy of [] an unresponded-to motion, even as it refrains from actively pursuing advocacy or inventing the *riposte* for a silent party." *Id.* In the absence of a response, however, the Court will not "*sua sponte* comb the record from the partisan perspective of an advocate for the non-moving party." *Id.* at 410. If the court determines that the unrebutted evidence set forth by the moving party supports a conclusion that there is no genuine issue of material fact, the court will determine that the moving party has carried its burden, and "judgment shall be rendered forthwith." *Id.* (alteration omitted).

## III. ANALYSIS

The Prison Litigation Reform Act ("PLRA") requires prisoners to exhaust all available administrative remedies prior to filing suit under § 1983. *See* 42 U.S.C. § 1997e(a); *see also Porter v. Nussle*, 534 U.S. 516, 532 (2002) (holding "that the PLRA's

5

exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong"). Administrative exhaustion is mandatory, regardless of the type of relief sought, or whether such relief can be granted through the administrative process. *See Ross v. Blake*, 578 U.S. 632, 641 (2016); *Woodford v. Ngo*, 548 U.S. 81, 84 (2006) (citing *Booth v. Churner*, 532 U.S. 731, 739 (2001)). Proper exhaustion requires not only the initial filing of a grievance and response, but also the exhaustion of any appeal procedures. *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999). Therefore, a prisoner cannot exhaust his administrative remedies during the course of federal litigation; rather, "[t]he plain language of the [PLRA] makes exhaustion a precondition to filing an action in federal court." *Id.*

At the time of the events giving rise to this suit, TDOC had a three-level grievance policy that required inmates to file a grievance within seven days of the event alleged in the grievance (Level I); appeal any undesirable response from that grievance to the grievance committee, which submitted its findings to the Warden who issued a decision (Level II); and appeal any undesirable decision by the Warden to the Assistant Commissioner (Level III) [Doc. 106-1 ¶¶ 3–4; Doc. 106-2 pp. 2–3]. The Level III decision is final [Doc. 106-1 ¶ 4; Doc. 106-2 pp. 2–3].

As noted above, Plaintiff's complaint arises from allegations that (1) he was denied access to religious materials and the ability to freely engage in his religious practice ("religious grievance"), and (2) Plaintiff was retaliated against and assaulted when he

6

attempted to complain about the religious issues ("excessive force grievance"). Plaintiff filed the instant suit on or about April 12, 2018 [Doc. 1 p. 10].

Plaintiff only filed one religious grievance, and that grievance was logged as received on March 21, 2018 [Doc. 106-1 ¶ 5; Doc. 106-3 p. 1]. The Assistant Commissioner did not issue his Level III decision as to that grievance until May 8, 2018 [Doc. 106-1 ¶ 5; Doc. 106-3 p. 5.]. Plaintiff filed one retaliation grievance related to excessive force on April 19, 2018 [Doc. 106-1 ¶ 6; Doc. 106-4]. The Assistant Commissioner issued his Level III decision as to that grievance on June 1, 2018 [Doc. 106-1 ¶ 6; Doc. 106-4 p. 5].

Therefore, the competent summary judgment evidence demonstrates that Plaintiff failed to exhaust his available administrative remedies as to either his religious grievance or excessive force grievance until well after he filed this suit. *See Freeman*, 196 F.3d at 645; *Erby v. Kula*, 98 F. App'x 405, 407 (6th Cir. 2004) ("This court squarely has held that a prisoner 'may not exhaust administrative remedies during the pendency of the federal suit' (citing Freeman, 196 F.3d at 645)); *see also Jones v. Bock*, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."). Defendants are entitled to summary judgment.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment [Doc. 103] will be **GRANTED**, and this action will be **DISMISSED** without prejudice. Defendants' subsequent motion to dismiss [Doc. 107] will be **DENIED** as moot.

7

Further, the Court **CERTIFIES** that any appeal from this decision would not be taken in good faith, and that Plaintiff should be **DENIED** leave to proceed *in forma pauperis* on any subsequent appeal.

**AN APPROPRIATE JUDGMENT ORDER WILL ENTER.**

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE

8

Case 3:18-cv-00155-TAV-DCP   Document 109   Filed 06/24/22   Page 8 of 8   PageID #: 606